UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MICHAEL HEARN, pro se,                    )
                    Plaintiff,            )
                                          )
                                          )
vs.                                       )        Case No. 07-1293
                                          )
                                          )
                                          )
                                          )
CLETUS SHAW, et al.,                      )
                    Defendant(s).         )

---

### PRO SE MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM

NOW COMES Plaintiff-Movant Michael Hearn, pro se (hereinafter, the "Movant") and moves this Honorable Court pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR-7.1, for an ORDER directing the Clerk of this Court to enter partial summary judgment against Defendant CLETUS SHAW on the basis that there is no genuine issue to any material fact and that the Movant is entitled to such judgment as a matter of law. In support thereof, the Movant states as follows:

### Background

Movant filed the instant cause of action under section 1983 seeking a remedy for alleged constitutional deprivations by prison officials. Shortly thereafter, on December 06, 2007, this Court issued a Merit Review Order under 28 USC 1915A, finding that federal claims were adequately stated and held the named Defendant to answer to the Complaint.

Defendant(s) in the instant cause of action have filed their answers within the proper time frame. However, Plaintiff has objected to the Defendants' first set of interrogatories and Defendants have not answered Plaintiff's first set of interrogatories.

1

## Statement of Material Facts Claimed To Be Undisputed

1. Defendant CLETUS SHAW admits that he was a Lieutenant at Pontiac Correct-
ional Center assigned to the Protective Custody Unit at all times relevant to
the Complaint filed herein (See EXHIBIT A at page 7, lines 16–22 (SHAW ANSWER)),
wherefrom based on information and belief, a reasonable deduction could be drawn
that would possibly support a conclusion that Defendant SHAW by virtue of his posi-
tion was responsible for managing other subordinate staff members.  (HEARN AFFIDA-
VIT)

2. Defendant SHAW admits that on or about October 31, 2006 a grievance was
filed complaining of his misconduct involving him unreasonably refusing to allow
the Movant to use the indoor toilet or provide him with toilet paper, despite the
fact that he was specifically informed of the unsanitary conditions; extreme tempera-
tures; and the lack of toiletries (See EXHIBIT A at page 4, lines 12–18 (SHAW ANSW-
ER)), wherefrom based on information and belief, a reasonable deduction could be
drawn that would possibly support a conclusion that the Movant presented all the
material elements of his deliberate indifference claim in his grievance.  (HEARN
AFFIDAVIT)

3. Defendant SHAW admits that the following statement is an accurate reflect-
ion of Counselor Gragert's summation of her interview with him regarding the above
mentioned grievance, in particular, where said Counselor stated in relevant part that:
"[P]er Lt. SHAW at first you states you had to urinate" (See EXHIBIT A at page 5,
lines 11–13 (SHAW ANSWER), without addressing the substance of the Movant's complaint
about Defendant SHAW refusal to provide toilet paper or allow the Movant to use the
indoor toilet to abate the unsanitary conditions or extreme temperatures (See EXHIB-
IT A at page 4, lines 12–18 (SHAW ANSWER), wherefrom based on information and belief,
a reasonable deduction could be drawn that would possibly support a conclusion that
Defendant SHAW in effect concedes the unaddressed portions of the Movant's complaint

2

or grievance during the administrative appeal, namely, not providing the Movant with toilet paper. (HEARN AFFIDAVIT) Further, based on information and belief, a reasonable inference could be drawn from such statement that would possibly support a conclusion that it was not an irregular occurrence for inmates, namely, the Movant to submit their requests for toilet paper from Defendant SHAW to be used with the outdoor toilet and therefore no toilet paper was readily accessible for inmates that desired to use the outdoor toilet. (HEARN AFFIDAVIT)

4. Defendant admits that "there is not a functional sink to wash hands at the outside toilet" (See EXHIBIT A at page 2, lines 1-3 (SHAW ANSWER), wherefrom based on information and belief, a reasonable deduction could be drawn that would possibly support a conclusion that there was -no- running water, soap nor paper towels was available to "wash hands at the outside toilet " Id., wherefrom based on informat-ion and belief, a reasonable inference could be drawn that would support a conclus-ion that Defendant SHAW knew of this lack of basic hygiene items and working plumb-ing existed, yet failed to make any steps to abate such condition, but to the contra-ry, refused to allow the Movant to use the indoor toilet, and further knew of the substantial risk of such exposure would pose, yet disregarded such risk.

5. Defendant SHAW admits "that the outside toilet facilities are exposed to weather conditions" (See EXHIBIT A at page 2, lines 1-2 (SHAW ANSWER)), wherefrom based on information and belief, a reasonable deduction could be drawn that prison-ers using the outside toilet would also be exposed to extreme temperature.

## Relevant Law

### I. Legal Standard For Motion For Summary Judgment.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the mov-ing party is entitled to a judgment as a matter of law. " Fed. R. Civ. P. 56; Out-

3

law v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir. 1984), cert. denied, 470 U.S. 1028 (1985). In determing whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. Beraha v. Baxter Health Corp., 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Outlaw, 259 F.3d at 837. A non-moving party cannot rest on its pleadings, but must demostrate that there is admissible evidence that will support its position. Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" Outlaw, 259 F.3d at 838, citing Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56 (e)(other citations omitted).

Fed. Rule 56 of the Fed. R. Civ. P. "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial. Mechnig v. Sears Roebucks & Co., 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. First Ind. Bank v. Baker, 957 F.2d 506, 506, 507-08 (7th Cir. 1992).

4

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986); Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996).

## II.  **Deliberate Indifference.**

Under the Eighth Amendment of the United States Constitution a duty is imposed upon prison officials to take reasonable steps to provide the minimal civilized measure of life's necessities, and to abate any condition that poses a serious and substantial  risk of serious harm to the health of those prisoners in their custody and care.  See Farmer v. Brennan, 511 U.S. 825, ___ ___ ___, 114 S.Ct. 1970, 1976-77, 128 L.ed.2d 811 (1994).  Courts have further observed that a basic level of sanitation and hygiene are among the minimal civilized measure of life's necessities, which includes: toilet paper, soap, paper towels, running water and functioning sinks. See Kimbrough v. O'Neil, 523 F.2d 1057, 1058-59 (1975); also see Dawson v. Kendrick, 527 F. Supp. at 1287-88 (1981).  Our Seventh Circuit has recognized that the exposure to feces and/or urine poses a serious and substantial risk of serious harm where such unsanitary conditions causes general misery and the spread of disease.  See DeMallory v. Cullen, 855 F.2d 442, 444-46 (7th Cir. 1988); Wells v. Franzen, 777 F.2d 1258, 1263-64 (7th Cir. 1985); Isby v. Clark, 100 F.3d 502, 505 (7th Cir. 1996).  Our Seventh Circuit has also observed that the Eighth Amendment extends to protect prisoner from extreme temperatures.  See Dixon Godinez, 114 F.3d 640, 644 (7th Cir. 1997) (observing prisoner's right to be free from extremely cold temperatures).

## III.  **Qualified Immunity.**

In order for a Plaintiff to defeat a qualified immunity defense, he must prove the Defendant violated a constitutional right that was clearly established at the time of the alleged misconduct.  McGrath v. Gills, 44 F.3d 567, 569 (7th Cir. 1995). The burden of establishing the existence of such a clearly established constitutional

5

right is on plaintiff. Id. at 570 (citing Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). He must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993). Although this is a substantial barrier for plaintiff, it is appropriate because qualified immunity is designed to shield from civil liability all but the plainly incompetent and those who knowingly violate the law. Kernats v. O'Sullivan, 35 F.3d 1171, 1177 (7th Cir. 1994).

Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what he is doing at the time violates that right. McGrath, 44 F.3d at 570; See also Anderson v. Creighton, 483 U.S. 635 (1987).

**IV. Sovereign Immunity.**

Under the Eleventh Amendment of the United States Constitution grants the states immunity from being sued in federal court by the state's own citizens, except where injunctive relief is sought. However, such an immunity defense is only viable against an official capacity suit where injunctive relief is not sought. See Duckworth v. Franzen, 780 F.2d 645 (7th Cir. 1985).

## Analysis

**In applying the aforementioned principles to the instant case:**

**I. Movant Is Entitled To Partial Summary Judgment.**

It is the Plaintiff/Movant's contention that he is entitled to partial summary judgment in respects to the claim(s) against Defendant CLETUS SHAW because there is no genuine issue of any material fact.

1) Movant asserts that there is no genuine issue of any material fact because: Movant relies on his "Statement of Material Fact Claimed to be Undisputed" and the "AFFIDAVIT" incorporated herein.

6

## II. Defendant SHAW Is Liable For His Deliberate Indifference In Violating Movant's Eighth Amendment Right.

It is the Movant's contention that Defendant SHAW is liable for being deliberately indifferent to the Movant being deprived of the "minimal civilized measure of life's necessities" and his unnecessary exposure to unsafe and unsanitary conditions that poses a "serious and substantial" risk to his health where Defendant SHAW repeatedly denied Movant's request to use the indoor toilet or to be provided toilet paper, despite the fact that he knew that it was extremely cold and the outdoor toilet was exposed to the weather; no functioning sinks; no running water; no soap; and no paper towel for the outdoor toilet creating a risk of general misery and the spread of disease, and despite the fact of being made aware of feces on the seats of the outdoor toilet, yet unreasonably failed to take any steps to abate these conditions.

1) In applying the principles observed in Farmer, Kimbrough, DeMallory, Wells, and Dixon to the instant case, it is reasonable to conclude that Defendant SHAW's acts and/or omission involving his refusal to allow the Movant to use the indoor toilet, despite all the surrounding circumstances, such acts and/or omission constitutes a deliberate indifference that is subject to liability.

## III. Defendant SHAW Is Not Entitled To A Qualified Immunity Defense.

It is the Movant's contention that Defendant SHAW is not entitled to a defense of qualified immunity because, inter alia, his conduct violated Movant's clear statory rights, as well.

1) Generally the United States Supreme Court has recognized the Eighth Amendment prohibitions in Farmer in 1994 and therefore Defendant SHAW knew or reasonably should have known that he specific conduct was unlawful in 2006, more specifically, where state statute expressly and impliedly prohibited such conduct, in particular, where 730 ILCS 5/3-7-2(a) (West 2006) provides in relevant part that:

"All institutions and facilities of the Department shall provide every

7

committed person with access to toilet facilities..."
and further where 730 ILCS 5/3-8-7 (b)(1) (West 2006) provides in relevant part
that: "Corporal punishment and displinary restrictions on sanitary facilities" are
prohibited, and therefore the Movant's right to be free from Defendant SHAW's
specific conduct was established at the time.

**IV. Defendant SHAW Is Not Entitled To A Sovereign Immunity Defense.**

It is the Movant's contention that Defendant SHAW is not entitled to a sovere-
ign immunity defense because he is being sued in his personal capacity.

1) In applying the principles observed in <u>Duckworth</u> the Eleventh Amendment
jurisprudence is inapposite to the instant case, and should be disregarded as being
frivolous.

### Prayer For Relief

**WHEREFORE,** the Movant prays that this Honorable Court grant the instant motion
for summary judgment finding Defendant SHAW liable.

/s/ *Michael Hearn*
MICHAEL HEARN

PONTIAC CORRECTIONAL
CENTER, UNDER THE RE-
GISTRY NO. B-82910,

700 W. LINCOLN AVE.,
PONTIAC, IL. 61764.

STATE OF ILLINOIS          )
                           )  SS.
COUNTY OF LIVINGSTON )

### AFFIDAVIT

**(Continued on next page)**

8

I, MICHAEL HEARN, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.  I am a prisoner at Pontiac Correctional Center, as a matter of personal knowledge.

2.  On or about October 25, 2006, I personally observed feces on the seats and and sides of the outdoor toilet facilites, as a matter of personal knowledge.

3.  On or about October 25, 2006, I personally observed that there were no functioning sinks to wash hand at the outdoor toilet, no soap, no running water, no paper towels nor any disposable protective covers for the toilet seat, although two toilets were being shared with approximately 85 to 100 other inmates, as a matter of personal knowledge.

4.  On or about October 25, 2006, I personally asked Defendant CLETUS SHAW if I could be allowed to use the indoor toilet because the outdoor toilet was unsanitary and that is was extreme cold, as a matter of personal knowledge.

5.  Defendant SHAW denied my request to use the indoor toilet, so I asked to be provided with toilet paper in order to clean some feces I observed on the toilet seat, but this request was also denied without any effort to see the conditions I was referring to, as a matter of personal knowledge.

6.  Defendant SHAW informed me in the presence of other that: "People in the army have to shit outside!", upon information and belief.

7.  Pursuant to the penalty of perjury as provided by 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, that I have read the above document, and that the information contained herein is true and correct to the best of my knowledge and belief.
Date: 06-1-2008.                                    /s/ _Michael Hearn_
                                                         **Affiant**

9

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MICHAEL HEARN,                          )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )    No. 07-1293
                                        )
CLETUS SHAW, et al.,                    )
                                        )
          Defendants.                   )

## DEFENDANTS SHAW AND WALKER'S ANSWER AND AFFIRMATIVE DEFENSES

NOW COME the Defendants, CLETUS SHAW and ROGER WALKER, by and
through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby
answer and raise affirmative defenses against the allegations in Plaintiff's Complaint,
stating as follows:

### STATEMENT OF CLAIM

1.    On or about October 25, 2006, plaintiff Hearn personally observed feces on
seats and sides of the outdoor toilet facilities on the South Cellhouse Protective Custody
exercise yard here at Pontiac Correctional Center, as a matter of personal knowledge.

**ANSWER:** Defendants lack sufficient knowledge as to admit or deny the allegations
in this paragraph.

2.    Further, plaintiff personally observed that toiletries nor sinks were available
for the usage of said outdoor toilet facilities, on or about October 25, 2006, as a matter of
personal knowledge.

                                        EXHIBIT A
                                        1 OF 14

**ANSWER:** Defendants Shaw and Walker lack sufficient knowledge as to admit or deny whether toiletries were available on or about October 25, 2006. Defendants Shaw and Walker admit that there is not a functional sink to wash hands at the outside toilet.

3.    Further, plaintiff personally observed that said outdoor toilet facilities are completely exposed to all weather conditions, consisting of unconventional outhouses that is partially enclosed by brick walls reaching approximately 3 feet in height with the sides exposed to on-lookers, namely, staff of the opposite sex, as a matter of personal knowledge.

**ANSWER:** Defendants Shaw and Walker admit that outdoor toilet facilities are exposed to weather conditions. Defendants Shaw and Walker lack knowledge as to the dimensions of the outdoor toilet. Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

4.    Plaintiff specifically informed defendant Shaw of the unsanitary conditions the toilet facilities were in, and asked to be allowed to use the indoor toilet facilities or to be provided with toilet paper because there was not any available, despite the fact that there was approximately 85 to 100 other inmates on the yard sharing two toilets. However, said defendant unreasonably denied plaintiff's request saying: "People in the army have to shit outside!", which was said in the presence of other inmates, as a matter of personal knowledge.

**ANSWER:** Defendant Shaw denies the allegations in this paragraph. Defendant Walker lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

5.    Upon information and belief, Pontiac Correctional Center is a category I maximum security institution, and all protective custody inmates here are required to use an outdoor toilet as described above, when, participating in any of the routinely scheduled exercise yard periods in accordance with an explicit policy of Pontiac Correctional Center or, in the alternative with a practice that is so permanent and well-settled at Pontiac Correctional Center that it constitutes a custom or usage with the force of law.

**ANSWER:** Defendants Shaw and Walker admit that Pontiac Correctional Center is a maximum security institution. Defendants Shaw and Walker admit that protective custody inmates are allowed but not forced to take yard. Defendants Shaw and Walker admit that yard time is two hours. Defendants Shaw and Walker deny that all protective custody inmates are required to use the outdoor toilet. Defendants Shaw and Walker deny the remaining allegations in this paragraph.

6.    Upon information and belief, at all times relevant herein, Menard Correctional Center is a category I maximum security institution that provides enclosed portable toilet facilities respectively for its inmates' usage, when, participating in their routinely scheduled exercise yard periods.

**ANSWER:** Defendants admit that Menard Correctional Center is a category I maximum security institution. Defendants lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

7.    Upon information and belief, at all times relevant herein, Stateville Correctional Center is a category I maximum security institution that provides enclosed

3

portable toilet facilities respectively for its inmates' usage, when, participating in their routinely scheduled yard periods.

**ANSWER:** Defendants admit that Stateville Correctional Center is a category I maximum security institution. Defendants lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

8. Prior to, October 25, 2006, and subsequent thereafter, plaintiff has personally observed defendant Jones having conversations with inmates on the exercise yard while the aforesaid outdoor toilet facilities were in plain view, on several occasions, as a matter of personal knowledge.

**ANSWER:** Defendants lack sufficient knowledge as to admit or deny what Plaintiff observed.

9. On or about October 31, 2006, plaintiff filed a grievance complaining of defendant Shaw's misconduct involving him unreasonably refusing to allow the plaintiff to use the outdoor toilet facilities or provide toilet paper, despite the fact that plaintiff informed him of the unsanitary surrounding the outdoor toilet; the frigid cold; and the lack or want of toiletries, as a matter of personal knowledge and departmental record.

**ANSWER:** Defendants Shaw and Walker admit that Plaintiff filed a grievance on or about October 31, 2006 about using the outdoor toilet.

10. Upon information and belief, defendant Shaw admits to denying plaintiff's requests to use the indoor toilet facilities, or to be provided toilet paper but, however claimed his denials were based on a. misimpression of the particular manner in which plaintiff had to use the toilet facilities where plaintiff's grievance purports a claim that he

4

needed defecate however plaintiff's Counselor's response indicated that defendant Shaw's response to the plaintiff's grievance was that plaintiff told him he had to urinate, in particular, where said Counselor's response indicated in relevant part that:

"[P]er Lt. Shaw at first you stated you had to urinate," as a matter of departmental record.

However, plaintiff's complaints regarding the unsanitary condition and the frigid cold weather conditions he was exposed to using the outdoor toilet facilities, were again disregarded, in particular, where plaintiff's Counselor's response stated in relevant part that:

"[E]ither way, there is a facility on the yard that is available," as a matter of record.

**ANSWER:** Defendants Shaw and Walker admit that Plaintiff's grievance was responded to by the counselor on November 1, 2006. Defendants Shaw and Walker admit that the quoted portions are an accurate reflection from Counselor Gragert. Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

11.    On or about February 27, 2007, the institutional Grievance Officer recommended that plaintiff's grievance be denied on the basis of, inter alia, that his complaints were based on his "own claim and personal opinion...without benefit of tangible evidence to verify his accusations," yet such recommendation disregard the fact that plaintiff specifically identified the officers and another prisoner that would have verified his claims, as a matter of departmental record.

5

**ANSWER:** Defendants Shaw and Walker admit that Plaintiff's grievance was reviewed on or about February 27, 2007. Defendants Shaw and Walker admit that the portion in quotes would read in its entirety, "own claim and personal opinion, denied by staff with explanation, without benefit of tangible evidence to verify his accusations." Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

12.     On or about February 28, 2007, defendant Jones approve the above recommendation, despite the fact that staff have repeatedly showed continual indifference to his rights on the face of the record, as a matter of departmental record.

**ANSWER:** Defendants Shaw and Walker admit that Defendant Jones' designee concurred with the review on or about February 28, 2007. Defendants Shaw and Walker deny the remaining allegations in this paragraph.

13.     On or about May 21, 2007, the Administrative Review Board recommended that plaintiff's grievance be denied based on their opinion that the "issue was appropriately addressed by the institution administrative" and the "charges of staff misconduct...[were] not substantiated," as a matter of departmental record. However, said Board in recognizing defendant Jones' pre-existing duty to provide toiletries, advised in relevant part that:

"[W]arden Jones should remind staff that when available, toilet paper should be supplied to the outside toilet."

6

Subsequently thereafter, defendant Walker approved said Board's recommendation and additional directed defendant Jones to "proceed accordingly," as a matter of departmental record.

**ANSWER:** Defendants Shaw and Walker admit that the Administrative Review Board responded to Plaintiff's grievance on May 21, 2007. Defendants Shaw and Walker admit that the quoted sections are accurate responses from the Administrative Review Board. Defendant Shaw and Walker lack sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

14.     To date, Pontiac Correctional Center's staff have not made any steps towards making toilet paper available for the outdoor toilet facilities but, to the contrary have confiscated toilet paper from prisoners' cells, as a matter of personal knowledge.

**ANSWER:** Defendants Shaw and Walker deny that steps have not been made in making sure that toilet paper is available for inmates as inmates are allowed to take toilet paper with them when they are out in yard. Defendants Shaw and Walker lack sufficient knowledge as to admit or deny whether inmates have had toilet paper confiscated.

15.     At all times relevant to the misconduct complained of herein, defendant Cletus Shaw, was and is, a state employee, while acting under the color of law and within the scope of his employment as Lieutenant at Pontiac Correctional Center where under his assignment to the South Cell House he is responsible for the general supervision of staff and inmates at the Protective Custody Unit. He is being sued in his individual capacity.

**ANSWER:** Defendant Shaw admits that he is a correctional lieutenant at Pontiac Correctional Center, and held that position at the times relevant to the complaint. To the

7

extent that this paragraph requires a response, Defendant Walker lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

16.    Plaintiff realleges paragraphs 1 thru 15, as though fully stated and incorporated herein.

**ANSWER:** To the extent that this paragraph requires a response, Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the allegations in this paragraph.

17.    As a direct and proximate cause of defendant Shaw's wilful and wanton misconduct, undertaken with deliberate indifference to basic human needs, personal hygiene, unsafe and unsanitary conditions, unnecessary exposure to extremely cold temperatures, prisoners' limited expectation of privacy in their bodies, and the totality thereof, plaintiff was deprived of the following rights:

(a)    The right of plaintiff to be free from cruel and unusual punishment, in violation of a right secured under the Eighth Amendment of the United States Constitution;

(b)    The clear statutory right of plaintiff to be free from corporal punishment, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution;

(c)    The clear statutory right of plaintiff to be free from unjustified interference with his right to exercise outside his cell, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution.

**ANSWER:** Defendant Shaw denies the allegations in this paragraph. To the extent that this paragraph requires a response, Defendant Walker lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

8

18.    As a direct and proximate cause of defendant Shaw's above mentioned misconduct, plaintiff has been placed at serious risk of future psychological and physical injuries by repeated exposure to such unsafe and inhumane conditions, which is a travesty that has ran its course from October 25, 2006, to date.

**ANSWER:** Defendant Shaw denies the allegations in this paragraph. To the extent that this paragraph requires a response, Defendant Walker lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

19.    At all times relevant to the misconduct complained of hereinafter, defendant Eddie Jones, was and is, a state employee, while acting under the color of law and within the scope of his employment as Warden of Pontiac Correctional Center where he is responsible for, inter alia, administers and directs overall programs and activities; formulating policy, procedure, and institutional directive for employees and inmates. He is being sued in his individual and official capacities.

**ANSWER:** Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the allegations in this paragraph.

20.    Plaintiff realleges paragraphs 1 thru 19, as though fully stated and incorporated herein.

**ANSWER:** Defendants Shaw and Walker repeat their answers to paragraphs 1 through 19.

21.    As a direct and proximate cause of defendant Jones' wilful and wanton misconduct of repeatedly turning a blind eye to his subordinates' deliberate indifference to basic human needs, plaintiff was deprived of the following rights:

9

(a)    The right of plaintiff to be free from cruel and unusual punishment, in violation of a right secured under the Eighth Amendment of the United States Constitution;

(b)    The clear statutory right of plaintiff to be free from corporal punishment, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution;

(c)    The clear statutory right of plaintiff to be free from unjustified interference with his right to exercise outside his cell, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution.

**ANSWER:** Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the allegations in this paragraph.

22.    As a direct and proximate cause of defendant Jones' above mentioned misconduct, plaintiff has been placed at serious risk of future psychological and physical injuries by repeated exposure to such unsafe and inhumane conditions, which is a travesty that has ran its course from October 25, 2006, to date.

**ANSWER:** Defendants Shaw and Walker lack sufficient knowledge as to admit or deny the allegations in this paragraph.

23.    As a direct and proximate cause of the aforesaid policy or custom of requiring protective custody inmates to use outdoor toilet facilities that are ill-equipped to accommodate prisoners' limited expectation of privacy in their bodies and are exposed to extreme weather conditions, plaintiff and other inmates subjected to the above referred policy or custom are being deprived of the following rights:

10

(a)    The right of plaintiff and those adversely affected, to a limited expectation of privacy in their bodies, rights secured to them under the Fourth Amendment of the United States Constitution;

(b)    The right of plaintiff, and those adversely affected, to be treated equally as other similar situated prisoners in a level I maximum institutions, rights secured to them under the Fourteenth Amendment to the United States Constitution.

**ANSWER:** This allegation appears to have been dismissed by the Court's screening. To the extent that an answer is required, Defendants deny the allegations in this paragraph.

24.    The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendant unless this court grants the declaratory and injunctive relief which plaintiff seeks. Also, plaintiff brings this action for a class of all "protective custody inmates" here at Pontiac Correctional Center who, on and after October 25, 2006, was subjected to the above mentioned policy or custom as part of them being required to use such outdoor toilet facilities during their exercise period outside their cells at Pontiac Correctional Center. The proposed class satisfied each of the required of Rule 23(a) of the Federal Rules of Civil Procedure. The relief sought is appropriate damages for each person subjected to the policy or custom and class certification is appropriate under Rule 23(b)(3).

**ANSWER:** Defendants deny that the Plaintiff has been injured. It appears from the Court's screening that Plaintiff's request to proceed as a class action has been denied. To

11

the extent that this paragraph further requires a response, Defendants deny the allegation in this paragraph.

25.     At all times relevant to the misconduct complained of herein, defendants Roger E. Walker, was and is, a state employee, while acting under the color of state law and within the scope of his employment as Director of the Illinois Department of Corrections where he is responsible for, inter alia, overall administration of all correctional facilities in the state of Illinois. He is being sued in his individual capacity.

**ANSWER:** Defendants admit that Roger E. Walker is the Director of the Illinois Department of Corrections. Defendant Walker admits that his duties and responsibilities as Director of the Illinois Department of Corrections are set out by statute. Defendant Shaw lacks sufficient knowledge as to admit or deny the remaining allegations in this paragraph.

26.     Plaintiff realleges paragraphs 1 thru 25, as though fully stated and incorporated herein.

**ANSWER:** Defendants repeat their answers to paragraphs 1 through 25.

27.     As a direct and proximate cause of defendant Walker's wilful and wanton misconduct of recklessly turning a blind eye to his subordinates' deliberate indifference to basic human needs while acting in concert, plaintiff was deprived of the following rights:

(a)     The right of plaintiff to be free from cruel and unusual punishment, in violation of a right secured under the Eighth Amendment of the United States Constitution;

12

(b)    The clear statutory right of plaintiff to be free from corporal punishment, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution;

(c)    The clear statutory right of plaintiff to be free from unjustified interference with his right to exercise outside his cell, and due process, in violation of rights secured to him under state law and the Fourteenth Amendment of the United States Constitution

**ANSWER:** Defendant Walker denies the allegations in this paragraph. Defendant Shaw lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

28.    As a direct and proximate cause of defendant Walker's above mentioned misconduct, plaintiff has been placed at serious risk of future psychological and physical injuries by repeated exposure to such unsafe and inhumane conditions, which is a travesty that has ran its course from October 25, 2006, to date.

**ANSWER:** Defendant Walker denies the allegations in this paragraph. Defendant Shaw lacks sufficient knowledge as to admit or deny the allegations in this paragraph.

## RELIEF REQUESTED

1.    Defendants deny that Plaintiff is entitled to compensatory damages.

2.    Defendants deny that Plaintiff is entitled to punitive damages.

3.    Defendants deny that any of Plaintiff's constitutional rights were violated.

4.    Defendants deny that Plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

Further answering and by way of affirmative defense, Defendants state as follows:

13

  1. At all times relevant to Plaintiff's claims, Defendants acted in good faith in the performance of his official duties and without violating the Plaintiff's clearly established constitutional rights. Defendants are protected from liability by the doctrine of qualified immunity.

  2. To the extent that Plaintiff has sued the Defendants in their official capacities, Plaintiff's suit is barred by the Eleventh Amendment.

       Respectfully submitted,

       CLETUS SHAW and ROGER WALKER,

       Defendants,

       LISA MADIGAN, Attorney General,
       State of Illinois,

Jacob H. Smith, #6290790     Attorney for Defendants,
Assistant Attorney General
500 South Second Street     By:___ s/Jacob H. Smith_____
Springfield, IL 62706        JACOB H. SMITH
(217) 782-9014         Assistant Attorney General
Of Counsel.